UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NATHAN A. COOK, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| | § | |
| | § | |
| | § | Civil Action No. |
| v. | § | 1:18-cv-417 |
| | § | |
| KRISTY WHITLEY, in her individual | § | |
| capacity and the CITY OF CEDAR | § | |
| PARK, TEXAS | § | |
| | § | |
| | § | |
| Defendants | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiff Nathan A. Cook brings this complaint alleging that Defendants violated his constitutional rights by falsely arresting him and imprisoning him for a crime he did not commit, and will show as follows:

### I.   PARTIES

1.   Plaintiff Nathan A. Cook is a resident of Austin, Texas.

2.   Defendant Kristy Whitley is a City of Cedar Park, Texas police detective, sued in her individual capacity for compensatory and punitive damages. She can be served with process at 911 Quest Parkway, Cedar Park, Texas 78613.

3.   Defendant City of Cedar Park is a Texas municipality, and operates the Cedar Park Police Department. It may be served through its city secretary, LeAnn M. Quinn, 450 Cypress Creek Rd., Cedar Park, TX 78613.

4.   Sean Mannix is the Cedar Park police chief, and the policymaker for the City in all matters related to the operation of the police department.

## II.    JURISDICTION AND VENUE

5.  This Court has federal question jurisdiction over this 42 U.S.C. § 1983 action pursuant to 28 U.S.C. §§ 1331 and 1343.

6.  Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1) as all relevant vents occurred in this division, and all Defendants reside in this state.

## III.    FACTS

7.  City of Cedar Park police officers, following the City's custom and practice of fabricating evidence to falsely arrest innocent people, falsely arrested Nathan A. Cook in the presence of his teenage daughter, N.D., while they were returning from a vacation abroad.

8.  Nathan A. Cook is a piano technician for the University of Texas, and also works as a private piano instructor and tuner who owns his own small business, Cook's Piano Service.

9.  Nathan A. Cook has no criminal record, and had never been arrested prior to this incident.

10. Nathan A. Cook has resided at the same address in Austin, Texas for seven years.

11. In August 2017, Nathan A. Cook and N.D. had travelled together to Mexico for a vacation. Father and daughter had a wonderful trip, and were returning to Austin Bergstrom International Airport (ABIA).

12. As Nathan A. Cook and N.D. passed through customs at ABIA, a police officer pulled Nathan out of the line, and told him he was under arrest for the felony offense of theft of services.

2

13. Nathan A. Cook was taken into custody and handcuffed in front of his teenage daughter, who was left alone at the airport without her father after returning from a voyage abroad.

14. The arresting officers "perp walked" Nathan A. Cook through the airport, in handcuffs, in front of numerous members of the public and his teenage daughter, causing Nathan A. Cook great embarrassment.

15. Nathan A. Cook was taken to the Travis County Jail, where he was booked into custody, strip searched, and imprisoned for several hours.

16. Nathan A. Cook had to beg his ex-wife, N.D.'s mother, to bail him out of jail after she had to come to the airport to pick up N.D. Fortunately, bail money was secured, and Nathan A. Cook was released on bond.

17. Completely unbeknownst to the Plaintiffs, Nathan A. Cook was arrested because Det. Whitley had sworn out a completely false warrant for his arrest.

18. Whitley had been assigned by the Cedar Park Police Department to investigate a "theft of services" complaint.

19. A woman named Lynndsi Cook rented a laser engraver from Burk's Digital Reprographics for use in her business, Innovative Keepsakes, LLC. Lynndsi Cook made several payments on the agreement before she stopped making regular payments, and Burk's Digital Reprographics called the police to retrieve the engraver.

20. Whitley was assigned to the case, spoke with the complaining witnesses at Burk's Digital Reprographics, and reviewed the relevant rental documents to conduct her investigation.

21. On the rental application, Lynndsi Cook listed her husband's name as "Nathan Cook," and he co-signed the rental application. All the information Lynndsi Cook completed on the application was true, and accurately described her and her husband.

22. Lynndsi Cook's husband, Nathan Cook, does not share any identifiers with Plaintiff Nathan A. Cook, beyond their incredibly common name. Nathan Cook has a different middle name, different middle initial, different home and business address, different date of birth, different phone numbers, and a different physical description. All of which a moderately competent police officer would have quickly discovered.

23. Whitley made no effort to confirm the identifiers for "Nathan Cook," despite the fact that it is a common name also shared by a famous actor, a record producer, and America's oldest living war veteran. A simple internet search suggests there are eight people named "Nathan Cook" living in the Austin area alone (but only one "Lynndsi Cook").

24. Lynndsi and Nathan Cook's home address and business addresses were both listed on the rental application Whitley reviewed. Both addresses on the rental application are miles away from Nathan A. Cook's home address.

25. The phone numbers Lynndsi Cook wrote on the rental agreement that Whitley reviewed also did not match any phone number associated with Nathan A. Cook.

26. Lynndsi Cook's husband, Nathan Cook, also signed the rental application. Nathan Cook's signature on the rental application that Whitley reviewed looks nothing like Nathan A. Cook's signature (which would have been available to Whitley from Nathan A. Cook's driver's license).

4

27. The address associated with Lynndsi and Nathan Cook's business was also listed on the rental agreement Whitely reviewed (and also publicly available on the internet), but also did not match Nathan A. Cook's address.

28. A Google search for Lynndsi Cook's distinctively spelled name lists her correct home address that was contained on the rental agreement, and suggests her husband's full name is Nathan T. Cook.

29. Despite her shoddy investigation, Whitely swore out a false arrest warrant for "Nathan Antonio Cook," identifying Nathan A. Cook with his correct social security number and date of birth, though no evidence supported that "Nathan A. Cook" had committed any crime.

30. Whitley's false affidavit stated that "a rental contract was signed by Cook, Nathan Antonio" (with Nathan A. Cook's date of birth), though Whitley knew at the time there was no evidence to support this essential fact. In fact, the name on the "rental contract" was "Nathan Cook," and any reasonable diligence would have revealed the suspect's middle name was not "Antonio."

31. Any reasonable officer reviewing the facts supporting the warrant would know it was false.

    a. Nathan A. Cook had never lived at the address listed in the rental agreement and also contained in the warrant. Nathan A. Cook had lived at his address for the past seven years.

    b. Nathan A. Cook was never married to Lynndsi Cook.

    c. Nathan A. Cook's phone number did not match any phone number listed on the rental agreement.

d.  Though the people who had rented the engraver to Lynndsi and Nathan Cook had met Nathan Cook multiple times, Whitley never conducted a photo array that would have confirmed she had the correct "Nathan Cook."

32. Whitley also never made any attempt to speak with Nathan A. Cook, which would have immediately revealed she had identified the wrong man.

33. Relying on Whitley's lies in her false affidavit, a magistrate signed an arrest warrant for "Nathan A. Cook," and the warrant was issued for Plaintiff Nathan A. Cook's arrest. The false statements in the warrant about Nathan A. Cook's full name, date of birth, and social security number were necessary to establish probable cause to arrest Nathan A. Cook.

34. At the time the arrest warrant was signed, no reasonable officer, from the facts Whitley knew, would have concluded Plaintiff Nathan A. Cook committed any crime. No probable cause existed to complete the arrest warrant.

35. Whitley's fraudulent affidavit proximately caused Plaintiff Nathan A. Cook to be arrested in front of his teenage daughter, N.D.

36. Within two weeks of the arrest, the charges were dismissed after a cursory review by the Williamson County district attorney's office.

37. After the charges were dismissed, the Cedar Park Police Department later wrote an email to Nathan A. Cook's criminal defense attorney admitting that "Nathan A. Cook should not have been named as a suspect in this offense. … Nathan A. Cook is not, nor should have been, a suspect in the Theft of Service offense report."

6

38. Shockingly, the Cedar Park Police Department has falsely arrested many other people, under substantially similar circumstances.

    a. **Greg Kelley** – in a 2013 investigation the Texas Rangers later found was plagued by Cedar Park officers failing to speak with witnesses, visit the scene of the crime, or consider other suspects, Mr. Kelley was arrested, prosecuted, and convicted of "super aggravated sexual assault" and sentenced to serve 25 years in prison when he was falsely accused by Cedar Park Police Detectives of molesting young boys at a daycare center. Mr. Kelley was released from prison when a subsequent, moderately competent, investigation revealed another man committed the horrific crimes Cedar Park officers falsely accused Mr. Kelley of. The judge who exonerated Mr. Kelley found Cedar Park detectives failed to gather corroborating evidence to confirm the suspect identified as "Greg" was actually Mr. Kelley. Rather than consider his officers had made a horrible mistake and conducted a shoddy investigation, Chief Mannix, in an open letter to the community, described Mr. Kelley's supporters as "cult-like," and accused them of having "no interest in seeking the truth."

    b. **Thomas Johnson** – Cedar Park Police Department officers falsely arrested Mr. Johnson in 2014 when an incorrectly transcribed license plate number suggested a man named Thomas Johnson who lived hundreds of miles away from Cedar Park had shoplifted from a Wal-Mart. The officers assigned to the case knowingly put the false identifiers in an arrest warrant, and arrested a Cedar Park-area resident named Thomas Johnson – a very common name – without conducting any investigation that would have confirmed any basic identifiers (such as address). Cedar Park's insurance company paid Mr. Johnson a settlement in 2015, but Mannix and the City made no reforms to the police department.

    c. **Deanna Cain** – Cedar Park Police Department officers put false information in an arrest warrant to secure the false arrest of Ms. Cain in 2014. Officers falsely wrote that Ms. Cain had lied about a car's mileage on a credit application, though the actual credit application documents reviewed by the officers showed the correct mileage. The District Attorney's office concluded "no crime was committed" when it reviewed the file. In January 2017, the City's insurance company again settled the claim, but Mannix and the City again made no reforms.

39. In each of these cases, officers made totally false statements in the affidavits they swore to courts to obtain these innocent peoples' arrests.

40. In the Johnson and Cain cases, the charges were dismissed immediately after a prosecutor reviewed the file because the police work was obviously terrible.

41. Upon information and belief, Chief Mannix knew about each of these incidents, but took no action to correct the obvious problems rampant in his department to ensure more innocent people – like Nathan A. Cook – were not falsely arrested.

42. None of the officers involved in the above cases were disciplined by the department, or faced any consequence of any kind.

43. This is not a case of a single "bad apple" officer repeatedly violating the Fourth Amendment rights of innocent people – different officers were involved in each of the above cases. The entire bunch of Cedar Park Police Department officers conduct a pattern, practice, and custom of falsifying basic, easily verifiable information on arrest warrants, then swearing to a magistrate that their false statements are true to secure an arrest warrant.

44. Upon information and belief, the City of Cedar Park fails to train its police officers that it is unlawful to include false information in arrest affidavits.

45. Upon information and belief, the City of Cedar Park fails to train its police officers they must verify identifying information before including it in an arrest affidavit.

46. Upon information and belief, the City of Cedar Park fails to supervise and discipline officers who swear out false arrest affidavits.

47. These patterns, practices, and customs of the Cedar Park Police Department were the moving force causing Plaintiff Nathan A. Cook's arrest and damages.

48. Plaintiff Nathan A. Cook incurred pecuniary damages from the false arrest, including significant attorneys' fees to clear his good name.

8

## IV.    CAUSES OF ACTION

### A.  VIOLATIONS OF NATHAN A. COOK'S FOURTH AMENDMENT RIGHTS – FALSE ARREST AND DELIBERATE FABRICATION – AGAINST DEFENDANT WHITLEY

49. Whitley caused Nathan A. Cook to be arrested for felony theft of services even though Whitley knew (as any reasonable officer in her position would have known), that she lacked probable cause to make such an arrest.

50. Whitley deliberately fabricated material information in an arrest affidavit that caused Nathan A. Cook to be falsely charged with felony theft of services and arrested. Whitley's conduct was shocking, objectively unreasonable, and plainly incompetent.

51. Whitley intentionally caused Nathan A. Cook to be falsely arrested on charges she knew were not supported by the evidence, and failed to establish probable cause.

52. Whitley's conduct was objectively unreasonable, violated Nathan A. Cook's clearly established right to be free from false arrest on deliberately fabricated charges, and proximately caused Plaintiffs to suffer significant damages. Accordingly, Whitley is liable for compensatory and punitive damages under 42 U.S.C. § 1983.

53. Whitley was acting under color of law at all relevant times.

## V.    MUNICIPAL LIABILITY OF CITY OF CEDAR PARK – VIOLATION OF FOURTH AMENDMENT RIGHTS

54. The City of Cedar Park, acting through its policymaker, Chief Mannix, had the following policies, practices, or customs that were the moving force causing the false arrest of Plaintiff Nathan A. Cook:

   a.  Including verifiably false information in arrest affidavits;

   b.  Failing to verify identifiers used in arrest affidavits;

9

    c.  Inadequately supervising its officers concerning probable cause in arrest affidavits;

    d.  Failing to train its officers concerning probable cause in arrest affidavits;

    e.  Failing to train its officers regarding obtaining correct identifiers for arrest affidavits.

55. Upon information and belief, the City of Cedar Park also ratified Whitley's false arrest of Plaintiff Nathan A. Cook, and she was never disciplined or faced any consequence for making false statements to a court to secure the arrest warrant.

56. Each of the policies delineated above was actually known, constructively known, and/or ratified by the City of Cedar Park and its policymakers and was promulgated with deliberate indifference to Plaintiffs' rights under the United States Constitution.

57. The known and obvious consequences of each of the above policies, practices, or customs was that City of Cedar Park police officers would be placed in recurring situations – such as those described above – in which the constitutional rights of innocent citizens would be violated. Accordingly, these policies, practices, and customs also made it highly predictable that the particular violations alleged here, all of which were under color of law, would result.

58. Consequently, each of the above policies delineated above were a moving force causing Plaintiffs' injuries that caused them to suffer significant damages.

59. Plaintiffs seek compensatory damages only against the City of Cedar Park.

## VI.    DAMAGES

60. Plaintiff Nathan A. Cook seeks the following damages:

    a.  Past and future economic damages;

10

b. Past and future mental anguish;

c. Attorneys' fees, including costs, expert fees, and attorneys' fees pursuant to 42 U.S.C. § 1988;

d. Past and future damages for injury to Plaintiff's character and reputation;

e. Pre and post-judgment interest at the highest rates allowable under the law;

f. All other compensatory and/or general damages to which Nathan A. Cook is entitled under state or federal law; and,

g. Punitive damages against Defendant Whitley only.

### VII.   JURY DEMAND

61. Plaintiffs respectfully request a trial by jury.

### VIII.   PRAYER FOR RELIEF

62. To right this grave injustice, Plaintiff requests that this Court:

a. Award compensatory damages to the Plaintiffs, against all Defendants, jointly and severally;

b. Award punitive damages to the Plaintiffs, against Defendant Whitley only;

c. Award the Plaintiffs costs, including expert fees and attorneys' fees pursuant to 42 U.S.C. § 1988;

d. Award pre-judgment and post-judgment interest at the highest rate allowable under the law; and,

e. Award and grant such other just relief as the Court deems proper.

Dated: May 16, 2018

Respectfully submitted,

**EDWARDS LAW**
1101 East 11th Street
Tel.  512-623-7727
Fax.  512-623-7729

By      /s/ Jeff Edwards
        JEFF EDWARDS
        State Bar No. 24014406
        jeff@edwards-law.com
        SCOTT MEDLOCK
        State Bar No. 24044783
        scott@edwards-law.com
        Lead Counsel


**CHA LAW GROUP**
4103 Manchaca Road
Austin, Texas 78704
Tel.  512-394-4230
Fax.  512-590-8700

By      /s/ Scott A. Thompson
        SCOTT A. THOMPSON
        State Bar No. 24099993
        scott@chalaw.com
        Co-Counsel

**ATTORNEYS FOR PLAINTIFFS**